**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUDREY RAYNER,** | : | **Civil No. 1:24-CV-00721** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I. Introduction

This case involves a recurring scenario and persistent error which courts have identified relating to the analysis of emotional impairments: The alleged unexplained failure of the Administrative Law Judge (ALJ) to incorporate a one-to-two-step task limitation made by a medical source the ALJ deems persuasive into a claimant's residual functional capacity (RFC) assessment.

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Oftentimes, when assessing a claimant's mental limitations, ALJs are called upon to consider opinions by state agency experts which may use legal terms of art in a casual fashion. Specifically, these state agency experts may indicate that a claimant's mental impairments were not totally disabling but then state that the claimant could understand "one-to-two-step tasks" or instructions. These opinions carry a potential for confusion and ambiguity because the experts' references to one-to-two-step tasks involve a term of art in Social Security practice which connotes jobs limited to reasoning level 1 since the definition of this reasoning level is confined to jobs which entail: "Apply[ing] commonsense understanding to carry out simple one- or two-step instructions." Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702. Thus, state agency experts' opinions stating that a claimant could perform one- and two-step tasks are tantamount to a finding that the claimant was extremely limited in meeting the mental demands of the workplace and could only perform the most rudimentary of tasks, reasoning level 1 jobs.

Since this error can be an outcome determinative, when an individual's ability to perform one-to-two-step tasks is at issue in a Social Security appeal, it is incumbent upon the ALJ hearing this disability claim to provide a logical bridge between the evidence and the ALJ's legal conclusions and factual findings, a logical

nexus which addresses the claimant's mental limitations in these areas and explains how they do not preclude employment. Specifically, we have instructed that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Id. at *8. Applying these legal benchmarks, courts have frequently held that the complete and unexplained failure of an ALJ to address, acknowledge or incorporate a one-to-two-step task limitation set forth in a persuasive medical opinion constitutes error which may compel remand.[2]

[2] See e.g., ADRIENNE LOMBARDO, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:24-CV-56, 2026 WL 674198, at *1 (M.D. Pa. Mar. 10, 2026); SARAH C., Plaintiff, v. FRANK BISIGNANO, Defendant., No. 1:23-CV-01828, 2026 WL 625094, at *1 (M.D. Pa. Mar. 5, 2026); FRED MCCLEARY, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:25-CV-26, 2026 WL 625113, at *1 (M.D. Pa. Mar. 5, 2026); Delillo v. Bisignano, No. 4:25-CV-523, 2026 WL 592389, at *1 (M.D. Pa. Mar. 3, 2026); Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026); Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6 (M.D. Pa. Apr. 22, 2025); Shipman v. Kijakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

We are reminded of these familiar principles in the instant case. In this case, the ALJ found that the plaintiff, Audrey Rayner, was not disabled and was capable of performing simple, repetitive, routine tasks. The ALJ reached this conclusion even though Rayner's treating source found that her mental impairments were totally disabling. Instead, the ALJ was persuaded by the opinions of two non-treating, non-examining state agency experts.

However, the ALJ's evaluation of these two medical opinions was flawed in that it failed to incorporate or acknowledge a critical aspect of these state agency expert medical opinions which the ALJ found persuasive; namely, both experts' conclusions that Rayner could perform only one- and two-step tasks. The ALJ then identified occupations the plaintiff could perform based on this RFC, which required reasoning levels of two, reasoning levels which exceeded the one-to-two-step task limitation prescribed by these state agency experts. The ALJ's failure to address or incorporate this limitation opined by both experts the ALJ found persuasive was error. Since the ALJ's analysis in this case does not provide a complete logical bridge between the opinion evidence the ALJ found persuasive and the ultimate residual functional capacity (RFC), we will remand this case for further consideration by the Commissioner.

## II. Statement of Facts and of the Case

On November 24, 2021, Audrey Rayner protectively filed a Title II application for a period of disability and disability insurance benefits. She also filed a Title XVI application for supplemental security income on January 6, 2022. In both applications, the plaintiff alleged disability beginning September 17, 2021. In her applications, Rayner alleged that she was disabled due to the following severe impairments: ADD, major anxiety disorder, and major depressive disorder. (Tr. 85).

Rayner was born on December 1, 1959, and was sixty-one years old on her alleged onset date, making her an individual closely approaching retirement age under the Commissioner's regulations. (Id.) She completed two years of college and previously worked as a resident care aid, administrative clerk, and invoice control clerk – all skilled occupations. (Tr. 67). At the time of the hearing, the plaintiff was working part-time as a van driver for children with special needs. (Tr. 40).

**A. Summary of Clinical Record**

At the hearing on Rayner's disability application, she testified that she has trouble keeping a train of thought, remembering things, and organizing, has trouble concentrating, cannot finish what she starts, gets lost, cannot multitask, and is unable to work full-time because she feels overwhelmed, stressed out, and tired most of the time. (Tr. 39-64). She testified that she has constant anxiety but cannot take much of

her prescribed medication due to side effects. (Tr. 50). She testified that she had recently gone to crisis intervention for suicidal thoughts and quit her last job after being hospitalized due to depression. (Tr. 50-52).

The clinical record during the relevant period shows that Rayner was being treated by psychiatrist Dr. Gregory Bredow and his notes frequently describe Rayner's depression as severe. (Tr. 594, 609, 627). She regularly reported passive suicidal thoughts and was twice referred to crisis intervention during the relevant period. (Tr. 609, 613, 619, 958). Her records also indicate she had a history of several inpatient admissions over the years, though the last instance was in December 2019 for five days. (Tr. 659). Her chronic fatigue was noted to "impair[] efficiency with tasks." (Tr. 351). Rayner's depression and anxiety were treated with psychotropic medication, but she frequently complained of the side effects, including weight gain. (Tr. 609, 648, 958). Dr. Bredow described her as having "failed numerous medications over the years." (Tr. 361). Clinical notes also state that Rayner had poor focus and concentration and was forgetful. (Tr. 575, 613, 960). In 2020 and again in 2022, Rayner underwent transcranial magnetic stimulation (TMS) therapy for her depression. In early 2022 she completed thirty-six sessions which seemed to be effective in improving her depression symptoms. (Tr. 599, 602, 606). But the

treatments were cost prohibitive and by February 2023 she was again referred to crisis intervention due to significant depression. (Tr. 958).

### B. Medical Opinions Regarding Rayner's Mental Impairments

Against this medical backdrop, Rayner's treating psychiatrist, Dr. Bredow, submitted two opinions – one at the beginning of the disability period, in December 2021, and one near the time of the hearing, in March 2023. Both of these opinions concluded that Rayner's mental impairments were completely disabling.

At the outset, on December 17, 2021, Dr. Bredow indicated that Rayner's severe depression, anxiety, and ADHD were treatment resistant with minimal improvement even with medications noting "patient has failed numerous medications over the years." (Tr. 361). He described ongoing and persistent clinical depression, poor focus and concentration, some thought/speech blocking, anhedonia and abulia and described her prognosis as poor. (Tr. 362). Dr. Bredow opined that Rayer had marked limitations in numerous functional areas, including: her ability to maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an

unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in a routine work setting; and deal with normal work stress. (Tr. 366). Overall, Dr. Bredow concluded that his patient would have extreme limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and marked limitations in interacting with others and adapting or managing oneself. (Tr. 367). He also opined that she would be unable to complete an eight-hour workday and would be absent four or more days per month. (Id.)

Dr. Bredow again opined on Rayner's psychological limitations in March 2023. He concluded she had marked limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself and again opined she would be absent or unable to complete an eight-hour workday four or more days per month. (Tr. 955). Thus, Rayner's treating psychiatrist opined on two occasions that she would be totally disabled by her psychological impairments.

Two state agency experts also agreed that Rayner suffered from severe emotional impairments, though they concluded these conditions were not entirely disabling. On March 8, 2022, Dr. John Vigna opined that Rayner had mild limitations in her ability to understand, remember, or apply information and adapt

or manage oneself but moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace. (Tr. 87). Dr. Vigna went on to explain that, "[t]he claimant's ability to understand, remember and carry out complex or detailed instructions is limited, however, the claimant would be expected to understand and remember at least simple, one and two-step instructions." (Tr. 90). He went on to reiterate that, "[d]ue to the ability to understand and remember one and two-step instructions, the claimant is able to perform simple, routine tasks in a stable environment." (Id.)

In July of 2022, on reconsideration, a second state agency expert, Dr. John David Gavazzi, provided another assessment of the severity of Rayner's emotional impairments and, while he reached slightly different conclusions on her functional abilities, he agreed she would be limited to one-to-two-step tasks. Dr. Gavazzi found that the plaintiff experienced moderate impairments in concentrating, persisting, or maintaining pace, but was only mildly impaired when it came to understanding, remembering, or applying information, interacting with others, and adapting or managing oneself. (Tr. 98). Nonetheless, similarly to Dr. Vigna, when considering the plaintiff's concentration and persistence limitations, Dr. Gavazzi stated, "[t]he claimant can carry out very short and simple instructions. The claimant can perform

one- and two-step tasks," later reiterating, "[t]he claimant can perform one- or two-step, routine tasks in a stable environment." (Tr. 99-100).

This state agency medical consensus describing Rayner as capable of performing one-to-two-step tasks was significant since, under the Dictionary of Occupational Titles, the ability to perform one-to-two-step tasks confines a worker to reasoning level 1 jobs, the most severe restriction on workplace reasoning. See Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702. Therefore, the one-to-two-step functional capacity found by this state agency experts implied a very high degree of mental impairment and indicated that the plaintiff was limited to Reasoning Level One jobs. These restrictive opinions were further supported by the fact that the only treating source who opined on Rayner's functional abilities concluded her mental impairments were totally disabling.

**C. The ALJ Hearing and Decision**

It was against this medical backdrop that Rayner's disability claim came to be heard by the ALJ on April 14, 2023. (Tr. 36-74). Rayner and a Vocational Expert (VE) testified at this hearing. (Id.) In her testimony, Rayner explained that she experienced constant anxiety, had trouble concentrating, difficulty keeping a train of thought, had suicidal thoughts, and could not maintain employment due to feeling

overwhelmed. (Tr. 48-63). The VE, in turn, testified that the plaintiff could perform a number of jobs which entailed a reasoning level of 2, reasoning levels which exceeded the one-to-two-step limitations opined by the state agency medical experts. (Tr. 68).

Following this hearing, on June 23, 2023, the ALJ issued a decision denying Rayner's application for benefits. (Tr. 7-27). In that decision, the ALJ first concluded that the plaintiff's date last insured was June 30, 2026, and she had not engaged in substantial gainful activity since her alleged onset date of September 17, 2021. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Rayner had the following severe impairments: depression, anxiety disorder, and attention deficit-hyperactivity disorder (ADHD). (Id.) At Step 3, the ALJ found that Rayner was moderately impaired in terms of interacting with others and concentrating, persistence and pace, and mildly impaired in adapting or managing oneself and understanding, remembering, or applying information, but determined that these impairments did not meet or medically equal the severity of any listed impairments. (Tr. 14-15).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC") for Rayner considering the plaintiff's limitations from her impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Work is limited to simple, repetitive, routine tasks. The claimant cannot work at production rate pace. The claimant is limited to occasional interaction with the public, coworkers, and supervisors.

(Tr. 16). Notably, this RFC did not contain the one-to-two-step limitation recommended by the two state agency experts whose opinions the ALJ found to be generally persuasive.

In formulating the RFC, the ALJ found unpersuasive the opinions of Rayner's treating psychiatrist, Dr. Bredow, that these impairments were disabling.[3] (Tr. 19). Instead, the ALJ embraced the opinions of the non-treating, non-examining state agency experts, although the ALJ's decision conflated and combined these two opinions without acknowledging their differences. The ALJ's brief assessment of these opinions which formed the lynchpin of this decision simply stated:

[3] Since we find remand is appropriate for other reasons, we do not address the plaintiff's argument that the ALJ erred in rejecting the opinion of Dr. Bredow. While this argument is often a more difficult hill to climb under the deferential standard of review we employ, and we stop short of saying the ALJ's rejection of this opinion was erroneous, we do simply note that the ALJ's analysis of Dr. Bredow's opinion is very thinly supported and bears more thorough explanation on remand. Indeed, the ALJ's characterization of the plaintiff's medical records as benign and unremarkable throughout the opinion is not accurate in light of her repeated referrals to crisis management, suicidal ideation, and repeated transcranial magnetic stimulation therapy.

> The undersigned finds persuasive the March 2022 medical opinion of John Vigna, PsyD (Exhibits 1A/5-7 and 4A/5-7), and the July 2022 medical opinion of John Gavazzi, PsyD (Exhibits 7A/5-6 and 8A/5-6), that find the claimant can understand, remember, *and perform simple one- or two-step instructions*, can ask simple questions and accept instructions, can make simple decisions, and can perform routine tasks in a stable environment. The opinions are consistent with the objective clinical findings and the longitudinal medical records showing generally normal mood with some depressed mood, appropriate behavior, coherent and goal directed thought processes, and alert and interactive with appropriate insight and judgment along with denial of serious symptoms of hallucinations, suicidal or homicidal ideation, and delusions. The claimant continued to receive routine mental health treatment that consisted primarily of medication management and counseling. Dr. Vigna and Dr. Gavazzi support the opinions with citation to these records. Moreover, the undersigned notes that Dr. Vigna and Dr. Gavazzi are state agency physicians specializing in mental health who have had an opportunity to examine and review the medical records submitted prior to their opinions and are familiar with the Social Security disability rules and regulations.

(Tr. 18-19) (emphasis added).

This cursory analysis found both opinions persuasive, even though they reached somewhat different conclusions on Rayner's functional limitations. Further, despite finding these state agency mental consultant opinions, which the ALJ conceded stated the plaintiff could only follow simple one- or two-step instructions, persuasive, the ALJ did not incorporate this limitation in the RFC or explain why it was not necessary. In fact, the ALJ did not further analyze, address, or acknowledge this limitation.

Having made these findings, the ALJ concluded that Rayner could perform work in the national economy, including the occupations of kitchen helper, DICOT 318.687-010, 1991 WL 672755; dining room attendant, DICOT 311.677-018, 1991 WL 672696; and cook helper, DICOT 317.687-010, 1991 WL 672752 all of which require a reasoning level of 2, a reasoning level that exceeds the one-to-two step task mental limitations found by both state agency experts. (Tr. 20). The ALJ then determined that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

With the ALJ's decision cast in this fashion, this appeal followed. (Doc. 1). On appeal, Rayner contends, *inter alia*, that the ALJ erred in failing to address the opinions of the state agency psychologists, which the ALJ found persuasive, that limited her to one- and two-step tasks and then relying upon jobs which exceeded these mental limitations in finding that the plaintiff was not disabled. After a review of the evidence, we agree that the ALJ's omission of this limitation was divorced from any medical opinion and unexplained in the ALJ's analysis, leaving the factual, legal and logical bridge between the evidence and the ALJ's findings lacking. Therefore, we will remand this case for further consideration by the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which

would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

**C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the

Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20

> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. When presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). However, the ALJ must still fully articulate the basis of this medical opinion evaluation. Thus, when evaluating medical opinions "the

ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). It also follows that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8.

These legal benchmarks guide us in the instant case.

**D. This Case Will Be Remanded.**

After a review of the record, we conclude that the ALJ's failure to more thoroughly address or incorporate the state agency consultants' opinions which the ALJ deemed persuasive that limited Rayner to jobs involving one- and two-step tasks was error. At the outset, in reviewing this ALJ's decision we find ourselves at the intersection between two well-settled paradigms in the Social Security field. First, our highly deferential standard of review empowers "[t]he ALJ – not treating or examining physicians or State agency consultants – [to] make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Thus, our decision in this case in no way undercuts the legal tenet that an ALJ is not required to adopt every limitation opined by the experts but "can formulate an RFC based on different

parts from the different medical opinions." Durden, 191 F.Supp.3d at 455. However, at base, an ALJ must draft a reviewable opinion that is grounded in the evidence and provides the court with an adequately articulated rationale for the limitations adopted. Here, without the benefit of an explanation by the ALJ, we are unable to determine whether the ALJ's failure to address the limitation to one- and two-step tasks in both medical opinions the ALJ found persuasive was inadvertent or based upon the substantial evidence of record.

Indeed, it is well-settled that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," Cotter, 642 F.2d at 704, and must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. Moreover, an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. Morales 225 F.3d at 319. These mandates apply here in the context of the ALJ's assessment of medical opinion evidence limiting a claimant to one-to-two-step tasks. In fact, this Court, and others, have specifically concluded that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL

2813882, at *8. See also Rita R. v. Kijakazi, No. 21 C 5631, 2023 WL 2403139, at *3–4 (N.D. Ill. Mar. 8, 2023) ("Indeed, an ALJ is required to provide a thorough and appropriate explanation for rejecting a state agency psychologist's opinion that a claimant is limited to one-to-two step tasks"). The ALJ's decision in this case neither included the one-to-two-step limitation, nor explained why it was not incorporated into the RFC. This was error.

This error is not harmless here since the ALJ's conclusion that Rayner was not disabled is based upon her ability to perform work in occupations requiring a reasoning level of 2, a level which is inconsistent with a limitation to one- to two-step tasks. As this court explained:

> The DOT defines occupations by reasoning level and defines "reasoning level one" as the ability to "apply commonsense understanding to carry out *simple one-or two-step instructions*." The similarity of that language to "one- and two-step tasks," leads us to conclude that an individual limited to "one-and two-step tasks" is likewise limited to "reasoning level one" occupations. Importantly, this limitation *is* dischargeable: an ALJ may find otherwise, so long as they rely on and cite to substantial evidence that adequately explains why they are omitting the limitation in the claimant's RFC despite having found the relevant medical opinion to be persuasive.
>
> Additionally, courts in eight of the eleven circuits where a District court has considered this issue have held that "simple repetitive tasks" and "one- and two-step tasks" are legally distinct limitations. And all but one of these cases also found that a limitation to "one- and two-step

> tasks" necessarily limits the claimant to reasoning level one occupations.

Cruz, 2025 WL 2813882, at *7. See also Id. at *3–4 (N.D. Ill. Mar. 8, 2023). See also Rita R., 2023 WL 2403139, at *3–4 ("The ALJ's error is of crucial importance because a limitation to 'simple tasks' (the RFC limitation the ALJ found here) encompasses jobs that may involve complexity beyond one-to-two step tasks"); Daniel M. v. Kijakazi, No. 2:21-CV-243, 2023 WL 154909, at *3 (D. Vt. Jan. 11, 2023) (collecting cases) (concluding reasoning Levels 2 and 3 are not consistent with "simple, one-to-two step tasks").

To the extent the Commissioner now concedes that Dr. Gavazzi's opinion limited the plaintiff to one-to-two-step tasks but the opinion of Dr. Vigna did not, in our view this argument fails for two reasons. At the outset, the opinion of Dr. Vigna is even more opaque than that of Dr. Gavazzi with regard to the limitation to one-to-two-step tasks. Indeed, Dr. Vigna indicated the plaintiff could "at least" perform one-to-two-step tasks, which ultimately provides no real benchmark for the work the plaintiff can perform. Second, the Commissioner's argument, which would have us substitute a different rationale for this decision, is both an impermissible post-hoc rationalization, Schuster v. Astrue, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision; the

Commissioner may not offer a post-hoc rationalization."), and is belied by the fact that the ALJ addressed the opinions of Dr. Vigna and Dr. Gavazzi together and acknowledged that these opinions stated the plaintiff "can understand, remember, and perform simple one- or two-step instructions." (Tr. 19). Since the ALJ's decision did not note any difference in the limitations opined by these experts, this argument fails.

Simply put, more was needed here by way of explanation on the ALJ's part. Indeed, a rising tide of caselaw supports the view that the ALJ erred in failing to address the one- and two-step task limitation opined by the expert whose opinion he found persuasive.[4] Since the ALJ's burden of articulation is not met in the instant case, this matter will be remanded for further consideration by the Commissioner.

---

[4] See e.g., ADRIENNE LOMBARDO, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:24-CV-56, 2026 WL 674198, at *1 (M.D. Pa. Mar. 10, 2026); SARAH C., Plaintiff, v. FRANK BISIGNANO, Defendant., No. 1:23-CV-01828, 2026 WL 625094, at *1 (M.D. Pa. Mar. 5, 2026); FRED MCCLEARY, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:25-CV-26, 2026 WL 625113, at *1 (M.D. Pa. Mar. 5, 2026); Delillo v. Bisignano, No. 4:25-CV-523, 2026 WL 592389, at *1 (M.D. Pa. Mar. 3, 2026); Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026); Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6 (M.D. Pa. Apr. 22, 2025); Shipman v. Kijakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

Yet, while we find that these errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ. Finally, because we have vacated and remanded the decision of the Commissioner on these grounds, we decline to address any other issues since "[a] remand may produce different results on these claims, making discussion of them moot." Burns v. Colvin, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016).

## IV. Conclusion

For the foregoing reasons the plaintiff's request for a new administrative hearing will be GRANTED, the final decision of the Commissioner denying these claims will be vacated, and this case will be remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 7, 2026